**FILED**

IN THE UNITED STATES DISTRICT COURT

JUL 2 3 2003

FOR THE DISTRICT OF SOUTH CAROLINA

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

ROCK HILL DIVISION

| | | |
|---|---|---|
| Smith Enterprises, Inc., | ) | CIVIL ACTION NO.: 03-CP-46-1715 |
| | ) | |
| Plaintiff, | ) | **0  03  2441  22** |
| | ) | |
| vs. | ) | <u>**NOTICE OF REMOVAL**</u> |
| | ) | |
| Amerisure Insurance Companies, Inc., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

The Defendant hereby removes this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and would respectfully show unto the court the following:

1.      At the time this action was filed, and as of the filing of this Notice of Removal, the Plaintiff was a corporation organized and existing under the laws of South Carolina with its principal place of business in South Carolina; at the time this action was filed, and as of the filing of this Notice of Removal, the Defendant was a corporation organized and existing under the laws of Michigan with its principal place of business in Michigan; and at all such times the Plaintiff and Defendant were citizens of different states of the United States.

2.      This action was instituted by the Plaintiff by the filing of the Summons and Complaint on June 23, 2003, and service upon the Defendant through the Department of Insurance on July 3, 2003, and is now pending in the Court of Common Pleas for York County, State of South Carolina, located within the above-named division of this court.

3.      This action is an action at law, of a civil nature, to-wit: an action for breach of contract and bad faith; and the matter in controversy between the Plaintiff and Defendant, exclusive of interest and costs, exceeds the sum or value of Seventy-Five Thousand and No/100 ($75,000.00) Dollars, of which the District Courts of the United States have original jurisdiction.

4.      The Defendant files herewith a copy of all process, pleadings and orders served in this action, as a part of this Notice of Removal; being the Summons and Complaint.

5.      The clerk of the court from which the action is removed will be provided a copy of the Notice of Removal.

WHEREFORE, the Defendant prays that this Notice of Removal be accepted as sufficient for removal of this action to this court.

TURNER, PADGET, GRAHAM & LANEY, P.A.

By: _Edward W. Laney IV_
Edward W. Laney, Fed. ID #2595
Post Office Box 1473
Columbia, South Carolina 29202
(803) 254-2200

Attorneys for Defendant

Columbia, South Carolina

_July 24_____, 2003.

2

FILED-RECEIVED

STATE OF SOUTH CAROLINA

2003 JUN 23  PH 3: 10

COUNTY OF YORK

DAVID HAMILTON
C.C.C.P. & G.S.
YORK COUNTY, SC

IN THE COURT OF COMMON PLEAS

SIXTEENTH JUDICIAL CIRCUIT

COURT FILE NO. 03-CP-46 _17/5_

SMITH ENTERPRISES, INC.,          )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )          SUMMONS
                                  )
AMERISURE INSURANCE COMPANIES,    )
INC.,                             )
                                  )
        Defendants.               )
_____    )


TO THE DEFENDANT(S) ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you and to serve a copy of your Answer to said Complaint on the subscribers at their offices, Moore & Van Allen, PLLC, 100 N. Tryon Street, Floor 47, Charlotte, NC 28202, or to otherwise appear and defend, within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, or otherwise to appear and defend, within the time aforesaid, the Plaintiff in this action will obtain a judgment by default against you for the relief demanded in the Complaint.


This _20th_ day of June, 2003.

MOORE & VAN ALLEN, PLLC
100 N. Tryon Street, Floor 47
Charlotte, NC  28202
(704) 331-2463
ATTORNEYS FOR PLAINTIFF

CHAR2\747993_ 1

FILED-RECEIVED

STATE OF SOUTH CAROLINA    2009 JUN 28  PH 3: IN THE COURT OF COMMON PLEAS

COUNTY OF YORK    DAVID HAMILTON    COURT FILE NO. 03-CP-46 /7/5
                  C.C.C.P. & G.S.
                  YORK COUNTY, SC )
SMITH ENTERPRISES, INC.                )
                                       )
        Plaintiff,                     )
                                       )
vs.                                    )          COMPLAINT
                                       )
AMERISURE INSURANCE                    )
COMPANIES, INC.,                       )
                                       )
        Defendant.                     )
_____)

        Plaintiff, Smith Enterprises, Inc., ("Smith") complaining of Defendants herein, alleges

and says that:

## PARTIES

        1.      Smith is a corporation organized and existing under the laws of South Carolina

with its principal place of business in Rock Hill, South Carolina.

        2.      Upon information and belief, Defendant Amerisure Insurance Companies, Inc.

("Amerisure") is a national insurance company doing business in York County, South

Carolina.

## FACTS

        3.      Smith purchased a General Commercial Liability policy from Amerisure,

specifically  Policy Number CPP-0245702, a copy of which is attached hereto as Exhibit "A"

and incorporated herein by reference (the "Amerisure Policy").

        4.      The Amerisure policy provides coverage up to a limit of $ 1,000,000 for

personal and advertising injury, with a general aggregate coverage limit of $2,000,000.

        5.      The Amerisure policy contains a provision "Coverage B" in which Amerisure

assumes "the right and duty to defend the insured against any 'suit' seeking . . . damages" for a personal or advertising injury to which the policy applies.

6.    "Coverage B" of the Policy also obligates Amerisure to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' and 'advertising injury' to which this coverage part applies."

7.    The Amerisure Policy contains a further "Section V – Definitions" in which "Advertisement" was defined to mean "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purposes of attracting customers or supporters."

8.    "Section V, part 14" defines "personal and advertising injury" to include injuries "arising out of . . . [i]nfringing upon another's copyright, trade dress or slogan in your advertisement."

9.    Smith paid all premiums due and owing in connection with the Amerisure Policy during its effective period.

10.    On July 1, 2002, Manhattan Group LLC ("Manhattan") filed a Complaint number 02-CV-1650 JMR/FLN in the United States District Court, District of Minnesota ("Manhattan Complaint") alleging copyright infringement against Smith based on allegations that Smith marketed and distributed unauthorized copies of Manhattan Toy's "Groovy Girls" dolls in Smith's "My Best Friends" Easter baskets. A copy of that Complaint is attached hereto as Exhibit "B" and incorporated herein by reference.

11.    The Manhattan Complaint specifically alleged copyright infringement by the "offer for sale" of Smith's "My Best Friends" dolls.

12.    The Manhattan Complaint, in its Prayer for Relief, included a request for a

permanent injunction against, among other activities, Smith's offering, displaying, advertising, or offering for sale, any infringing products.

13.    On July 2, 2002, Smith notified Amerisure of the suit and requested that Amerisure provide Smith with a defense and indemnify Smith for any liability.

14.    Amerisure, in a letter dated July 16, 2002, acknowledged Smith's claim but refused to assume the defense of Manhattan's copyright infringement suit at that time.

15.    In a letter dated August 20, 2002, Amerisure denied that it had a duty to defend or indemnify Smith in the Manhattan action.   A copy of this letter is attached hereto as Exhibit "C" and incorporated herein by reference ("Denial Letter").

16.    Smith notified Amerisure that it disagreed with Amerisure's coverage determination and, of necessity, had to proceed with settlement negotiations.

17.    Despite Smith's repeated telephone and written correspondence requesting coverage and providing detailed supporting information as to why its claim was within the Amerisure Policy's coverage, Amerisure persisted in its refusal to defend or indemnify Smith.

18.    In a letter dated April 9, 2003, Smith notified Amerisure of its intent to settle the Manhattan dispute and requested a contribution from Amerisure toward the settlement.

19.    Amerisure notified Smith that it refused to contribute to the settlement in a letter dated April 15, 2003.

20.    Smith settled the Manhattan litigation through independent negotiations and without representation by or contribution from Amerisure

21.    Smith incurred costs and expenses and sustained losses as a result of the Manhattan litigation and its settlement.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

22.    Smith repeats and realleges paragraphs 1-21 as if fully set forth herein.

23.    Smith satisfied all applicable conditions precedent to trigger Amerisure's duty to defend and indemnify Smith, or the same have been waived or are the subject of an estoppel.

24.    By failing to defend and indemnify Smith in the Manhattan litigation, Amerisure has breached its contractual obligations to Smith under the terms of the Amerisure Policy.

25.    As a direct and proximate result of Amerisure's breach of contract, Smith has been damaged in an amount of at least $271,000 representing Smith's costs of defending against, and ultimately settling, the Manhattan litigation.

26.    In addition to actual damages, Smith is entitled to recover its attorneys' fees in bringing this action pursuant to S.C. Code Ann. §38-59-40.

## SECOND CAUSE OF ACTION

### (Bad Faith)

27.    Smith repeats and realleges paragraphs 1-25 as if fully set forth herein.

28.    Smith duly reported a claim within the coverage provided by the Amerisure Policy and has demanded on multiple occasions that Amerisure defend and indemnify Smith or otherwise fulfill its obligations to Smith under the policy.

29.    Amerisure has received and acknowledged Smith's claim but has unreasonably and in bad faith, refused to defend, indemnify, or contribute to settlement for the Manhattan litigation despite the fact that Amerisure's obligation to do so is clear under the Policy.

30.    Furthermore, upon information and belief, Amerisure's refusal to defend or indemnify Smith for facially improper reasons represents aggravated and outrageous conduct

and has been perpetrated with willful, wanton, and conscious disregard of Smith's rights under the Policy. Smith is therefore entitled to both actual and punitive damages against Amerisure. In addition, Smith is entitled to attorneys' fees incurred in bringing this action pursuant to S.C. Code Ann. §38-59-40.

WHEREFORE, Smith Enterprises, Inc., prays for the following relief:

(a)    A judgment awarding actual damages to Smith in an amount not less than $271,000;

(b)    A judgment awarding punitive damages to Smith in an amount to be determined at trial;

(c)    An award of attorneys' fees;

(d)    An award of prejudgment interest, postjudgment interest, and costs to the extent permitted by law;

(e)    Such other and further relief as the Court may deem just and proper.


This 10 day of June, 2003.


                                                    Scott M. Tyler
                                                    Scott M. Tyler
                                                    MOORE & VAN ALLEN, PLLC
                                                    100 N. Tryon Street, Floor 47
                                                    Charlotte, NC  28202
                                                    (704) 331-2463

                                                    ATTORNEYS FOR PLAINTIFF

EXHIBIT A

07/25/02  14:01 FAX 803 3   1958        SEI                    ● 002

# COMMON POLICY DECLARATIONS

**MICHIGAN MUTUAL**
**INSURANCE COMPANY**

SERVICE OFFICES:

FIRST YEAR:            1995

POLICY NUMBER:        CPP0245702000001
GROUP NUMBER :
ACCOUNT NUMBER: 10683717

PREMIUM AMOUNT DUE: $   125,682.00

RENEWAL OF:     CPP024570206000Y

NAMED INSURED: SMITH ENTERPRISES INC AND
               SEI INC AND TWIN SCENTS INC
MAILING ADDRESS:
P O BOX 12006

ROCK HILL            SC 29731

PRODUCER NUMBER:   855326 ~ 175
PRODUCER NAME AND ADDRESS:
THE INS CENTRE/
PIEDMONT
P O BOX 850

ROCK HILL            SC  29731

POLICY PERIOD:  FROM 04/30/2001 TO 04/30/2002     AT 12:01 A.M. STANDARD TIME
                AT YOUR MAILING ADDRESS SHOWN ABOVE. DATE ISSUED: 05/21/2001

NAMED INSURED'S BUSINESS:  DIST SPEC ITEMS
FORM OF BUSINESS:    CORPORATION
AUDIT PERIOD:   ANNUAL

**CO-INSURANCE CONTRACT**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THE
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | | PREMIUM |
|---|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ | 0.00 |
| COMMERCIAL AUTO COVERAGE PART | $ | 0.00 |
| COMMERCIAL CRIME COVERAGE PART | $ | 4,544.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ | 45,678.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ | 0.00 |
| COMMERCIAL PROPERTY COVERAGE PART | $ | 75,460.00 |
| STATE TAX | $ | |
| MUNICIPAL SURCHARGE | $ | |
| NEW YORK FIRE FEE | $ | |
| TOTAL | $ | 125,682.00 |

FORMS APPLICABLE TO ALL COVERAGE PARTS:    IL 00 17 11 85   M  10 85 01 97
M  10 72 01 93 IL 00 17 11 98

COUNTERSIGNED _____        BY _____
                        (DATE)                          (AUTHORIZED REPRESENTATIVE)

TOTAL POLLUTION
EXCLUSION



07/25/02  14:01 FAX 803 ● 1958      SEI      ● 003

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations

1. Is responsible for the payment of all premiums and .

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc. 1982, 1983

07/25/02  14:01 FAX 803 3   958      SEI                                    ☒00

# MICHIGAN MUTUAL INSURANCE COMPANY

26777 Halsted Road, Farmington Hills, MI 48333-2060
Phone 1-800-257-1900

## ASSIGNMENT

Assignment of this policy is valid only with the written consent of this Company.

## POLICY CONTENT

This policy is made and accepted subject to the foregoing provisions and stipulations and those which follow.  These provisions, in addition to those added by amendment or endorsement are a part of this policy.

This policy consists of the Common Policy Declarations, Coverage Parts and endorsements listed in that Declarations form.  In return for the payment of the premium, the Company agrees with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy.

## MUTUAL POLICY CONDITIONS

This policy is non-assessable.  You are a member of the Company. Members participate in the distribution of dividends to the extent and upon the conditions fixed and determined by the Board of Directors.  Such distribution will be made in accordance with the law.

**IN WITNESS WHEREOF,** the Company has executed and attested to these provisions.  This policy is not valid unless countersigned on the Declarations page by our authorized representative.

> The insured is notified that by virtue of this policy, he/she is a member of the Michigan Mutual Insurance Company of Farmington Hills, Michigan.  Members are entitled to vote either in person or by proxy at Company meetings.  Annual meetings are held on the second Thursday of May of each year at 10:30 A.M. at the Home Office in Farmington Hills, MI or at such other place in the City of Farmington Hills, to which the members may adjourn such meeting.

Secretary                                   President

**M 10 85 01 97**

07/25/02  14:02 FAX 803  1958       SEI                                    ☑005

# Amerisure

COMPANIES

## COMMERCIAL GENERAL LIABILITY COVERAGE P/
## DECLARATIONS P/

**POLICY NUMBER:**   CPP0245702000001              **EFFECTIVE DATE:** 04/30/2001

### NAMED INSURED

SMITH ENTERPRISES INC AND            SEI INC AND TWIN SCENTS INC

### LIMITS OF INSURANCE

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (OTHER THAN PRODUCTS–COMPLETED OPERATIONS) | 2,000,000 |
| PRODUCTS–COMPLETED OPERATIONS AGGREGATE LIMIT | 1,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | 1,000,000 |
| EACH OCCURRENCE LIMIT | 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOUR LIMIT | 100,000 |
| MEDICAL EXPENSE LIMIT | 5,000 ANY ONE PERSON |

### LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY

FOR DESCRIPTIONS OF THE INSURED PREMISES, PLEASE REFER TO THE ATTACHED SCHEDULES.

### CLASSIFICATIONS

ALL APPLICABLE CLASSIFICATIONS MAY BE FOUND IN THE ATTACHED SCHEDULES.

### FORMS APPLICABLE

| | | | |
|---|---|---|---|
| IL 00 21 04 98 | IL 02 49 08 99 | M 10 89 01 97 | M 21 89 11 97 |
| CG 00 57 09 99 | A 36 30 06 00 | AN 10 10 06 00 | CG 71 16 01 01 |
| AN 10 14 01 01 | CG 70 15 02 99 | CG 24 04 10 93 | A 37 02 03 98 |
| EB 70 01 11 97 | A 37 15 09 98 | CG 21 60 09 98 | CG 70 42 04 95 |
| CG 00 01 07 98 | CG 21 47 07 98 | M 10 74 01 93 | CG 20 15 11 88 |
| CG 71 03 07 99 | CG 70 71 09 98 | | |

07/25/02  14:02 FAX 803 3  1958        SEI                ☑060

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    Copyright, Insurance Services Office, Inc., 1997

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

07/25/02  14:03 FAX 803 ● 1958          SEI          ●          ☑000

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

 Ø 008

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

          Copyright, Insurance Services Office, Inc., 1997          CG 00 01 07 98

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

07/25/02  14:04 FAX 803 ● 1958        SEI            ● ●                    ☒011

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997                    CG 00 01 07 98

07/25/02   14:04 FAX 803 ⬤1958        SEI           ⬤                    ☑012

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no-longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

    (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

    (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

    (a) Owned, occupied or used by,

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

          Copyright, Insurance Services Office, Inc., 1997          CG 00 01 07 98

07/25/02   14:05 FAX 803 ___ 1958     SEI     ☑ 014



## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997
CG 00 01 07 98

07/25/02  14:06 FAX 803 ███1958    SEI         ●        ☑016

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

          Copyright, Insurance Services Office, Inc., 1997          CG 00 01 07 98

b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1) You;

    (2) Others trading under your name; or

    (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1997

07/25/02   14:07 FAX 803 3● ●958          SEI                              ●               ☑019

## UMBRELLA LIABILITY POLICY                           MICHIGAN MUTUAL INSURANCE COMPANY

| POLICY NUMBER | N/R | Dist.-Indiv. | Producer | Date of Issue | Issuing Office | First Year |
|---|---|---|---|---|---|---|
| CU 0240862 | R | 855326-150 | INS CENTRE/PIEDMONT | 5-22-01 | 60 | 1995 |

| Direct Bill No: | Account No: 10683717 | Group Code: | Form of Business | Servicing Offices |
|---|---|---|---|---|

**ITEM 1.** Named Insured and Mailing Address

SMITH ENTERPRISES, INC. AND SEI, INC. AND TWIN SCENTS, INC.
P O BOX 12006
ROCK HILL, SC  29731

Form of Business:
- ☐ Individual
- ☐ Partnership
- ☐ Joint Venture
- ☒ Organization (Other than Partnership or Joint Venture)

Servicing Offices: 60

**ITEM 2.** Policy Period
From      4-30-2001    to    4-30-2002
12:01 A.M. standard time at your mailing address shown above

| | |
|---|---|
| Premium Shown is Payable: | 23,682 |
| Tax: | |
| Total: | 23,682 |

Business Description:  DISTRIBUTOR OF SPECIALTY ITEMS

**ITEM 3.** The Limits of Insurance, subject to all the terms of this policy are:

a.   Each Occurrence Limit                                                      10,000,000

b.   Aggregates

    Products - Completed Operations                                        10,000,000

    Bodily Injury By Disease                                               10,000,000

    All Other Hazards, except liability arising from the ownership, operations,     10,000,000
    maintenance entrustment or use of an "auto".

    Self-Insured Retention                                                     10,000

**ITEM 4.** Premium Computation

(If not subject to audit) Flat Premium Charge           23,682
(If subject to audit) Minimum Premium

| Estimated Exposure | Rate | Rating Basis | Total Estimated Premium |
|---|---|---|---|

**ITEM 5.** Endorsements Attached to this Policy:

CU7431 0998 CU7429 1097 CU7420 1099 CU7428 1097          A3726 0299 CU7307 1097 CU7001 1099 CU7409 1097
CU7410 1097 CU 7437 0998  AN1006 0999 A3630 0600 AN1010 0600 CU7444 0101 AN1015 0101  CU 74 34 10 99

**ITEM 6.** Minimum Policy Charge   $2500

    In the event of cancellation by you, we shall retain no less than the amount shown above as the Minimum Policy Charge.

M-206 10 99

Countersigned by: _____
Authorized Representative

Amerisure
Companies

07/25/02  14:08 FAX 803 3██1958        SEI                    ●                        ☑020

# SCHEDULE OF UNDERLYING INSURANCE

This Schedule of Underlying Insurance is part of Policy No.    CU 0240862

| CARRIER, POLICY NUMBER & POLICY PERIOD | TYPE OF POLICY | LIMITS OF LIABILITY | |
|---|---|---|---|
| **MICHIGAN MUTUAL** | | | |
| WC 1316951-03<br><br>4-30-2001<br>4-30-2002 | Standard Workers Compensation and Employers Liability | Employers Liability<br>100,000<br>100,000<br><br>500,000 | Bodily Injury by Accident-each accident<br>Bodily Injury by Disease-each employee<br>Bodily Injury by Disease-policy limit |
| **MICHIGAN MUTUAL** | | | |
| CPP 0245702<br><br>4-30-2001<br>4-30-2002 | General Liability | Combined Single Limit Liability<br>1,000,000   each occurrence<br><br>Split Limit Liability<br><br><br>Aggregates<br>2,000,000<br>1,000,000 | <br><br><br>Bodily Injury-each occurrence<br>Property Damage-each occurrence<br><br>General Aggregate<br>Products-completed operations |
| **AMERISURE INSURANCE** | | | |
| CA 1180719<br><br>4-30-2001<br>4-30-2002 | Automobile Liability | Combined Single Limit Liability<br>1,000,000   each accident<br><br>Split Limit Liability | <br><br><br>Bodily Injury-each person<br>Bodily Injury-each accident<br>Property Damage-each accident |

M-208 (10-86)

07/25/02  14:08 FAX 803 ● 1958        SEI                         ●                              ☒021

# UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

The words "we," "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under B. WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to E. DEFINITIONS.

## A. COVERAGES

1. **Insuring Agreement**

    a. We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages which exceed the limit of "underlying liability insurance" or the "self-insured retention" because of:

        (1) "Bodily injury",

        (2) "Property damage", or

        (3) "Personal and advertising injury"

        caused by an "occurrence" to which this insurance applies.

    b. This insurance applies to "bodily injury", "property damage", and "personal and advertising injury" only if:

        (1) The "bodily injury", "property damage", or "personal and advertising injury" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury", "property damage", or "personal and advertising injury" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section B. WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury", "property damage", or "personal and advertising injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury", "property damage", or "personal and advertising injury" occurred, then any continuation, change or resumption of such "bodily injury", "property damage" or "personal and advertising injury" during or after the policy period will be deemed to have been known prior to the policy period.

    c. "Bodily injury", "property damage" or "personal and advertising injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of B. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury", "property damage" or "personal and advertising injury" after the end of the policy period.

CU 70 01 10 99

    d.   "Bodily injury", "property damage", or "personal and advertising injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section B, WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1)  Reports all, or any part, of the "bodily injury", "property damage" or "personal and advertising injury" to us or any other insurer;

        (2)  Receives a written or verbal demand or claim for damages because of the "bodily injury", "property damage" or "personal and advertising injury"; or

        (3)  Becomes aware by any other means that "bodily injury", "property damage" or "personal and advertising injury has occurred or has begun to occur.

    e.   With respect to the insurance provided under this policy, if there is no underlying insurer liable to do so, we have the right and duty to defend any "suit" seeking damages because of:

        (1)  "Bodily injury",
        (2)  "Property damage"; or
        (3)  "Personal and advertising injury".

    f.   We have no duty to defend any claim or "suit" that any other insurer has a duty to defend.  If we elect to join in the defense of such claims or "suits", we will pay all expenses we incur.

    g.   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under 1.  Insuring Agreement.

    h.   Coverage will apply only if the "suit" is brought in courts of the following jurisdictions:

        (1)  The United States of America, including its territories or possessions,

        (2)  Puerto Rico, or

        (3)  Canada.

We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But, the amount we will pay for damages is limited as described in C. LIMITS OF INSURANCE.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under 3.  Supplementary Payments.

2.  Exclusions

This insurance does not apply to:

    a.   Expected or intended injury

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b.   Contractual liability

        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

CU 70 01 10 99

(1) Assumed in any contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

c.  **Liquor liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.  **Workers compensation and similar laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e.  **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i)  "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii)  "Bodily injury" or "property damage" for which you may be liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible, or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing

operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i)   "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii)  "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**f.   Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use or entrustment to others of any "owned aircraft". Use includes operation and "loading or unloading."

(1)  This exclusion does not apply when:

(a)  The "owned aircraft" is covered by "underlying liability insurance" listed on the Schedule of Underlying Insurance; or

(b)  The "owned aircraft" is being operated without the knowledge or consent of an insured and in violation of any air worthiness certificate or civil aviation regulation.

07/25/02  14:09 FAX 803 ___ 1958        SEI                                      ☒025

(2) This exclusion does not apply to liability assumed under any "insured contract" for the ownership, maintenance, or use of aircraft.

g.   Watercraft

"Bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use or entrustment to others of any watercraft owned or operated by or loaned or rented to any  insured. Use includes "loading or unloading".

(1) This exclusion does not apply to:

    (a) A watercraft while ashore on premises you own or rent;

    (b) A watercraft you do not own that is:

        (i)    Less than 51 feet long; and

        (ii)   Not being used to carry persons or property for a charge;

    (c) "Owned watercraft" covered by a policy of "underlying liability insurance" listed on the Schedule of Underlying Insurance;

    (d) liability assumed under any "insured contract" for the ownership, maintenance or use of watercraft.

h.   Mobile equipment

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" in, or while in practice for,  or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i.   War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.  This exclusion applies only to liability assumed under a contract or agreement.

j.   Damage to property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.  Damage to your product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage to your work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to impaired property or property not physically injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall of products, work or impaired property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product;"

(2) "Your work;" or

(3) "Impaired property;"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in t.

o.  **Personal and advertising injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"; or

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 16. a.,b. and c. of "personal and advertising injury" under E. Definitions.

p.  **Discrimination**

"Bodily injury", "property damage", or "personal and advertising injury" arising out of discrimination of any type or any discriminatory acts committed by any insured. Discrimination may be intentional or unintentional acts or omissions.

q.  **ERISA**

Any obligation incurred or imposed upon you which arises out of the Employee Retirement Income Security Act of 1974, or any law which amends this act.

r.  **Asbestos**

"Bodily injury", "property damage" or "personal and advertising injury", arising out of:

(1) The removal, replacement, repair, enclosure or encapsulation of asbestos from any building or structure;

(2) The use, manufacture, transportation, removal, storage or disposal of asbestos or any substance, goods, products or structures containing asbestos; or

(3) "Bodily injury" arising out of the inhalation, ingestion or absorption of asbestos by any person, including any prolonged or repeated exposure to asbestos.

s.  **Autos of directors, officers, stockholders, employees**

"Bodily Injury" or "Property Damage" liability of any director, officer, stockholder, or employee of the Named Insured arising out of the ownership, maintenance or use of an auto unless:

(1) The automobile is covered by a policy of "underlying liability insurance", and

(2) The limits of the "underlying liability insurance" equal or exceed the limits shown in the Schedule of Underlying Insurance.

Use includes "loading and "unloading".

t.  Nuclear energy liability

(1) "Bodily injury" or "property damage" with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

(2) "Bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" and with respect to which;

(a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(3) "Bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if;

(a) the "nuclear material";

(i)   is at any "nuclear facility" owned by, or operated by or on behalf of an insured, or

(ii)   has been discharged or dispersed from a "nuclear facility" described in (i) above;

(b) the "nuclear material" is contained in "spent fuel" or "waste" which at any time was handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if the "nuclear facility" is located within the United States of America, its territories or possessions or Canada, this exclusion will apply only to "property damage" to the "nuclear facility" and any property located on its premises.

For the purpose of this exclusion, the definition of "property damage" is expanded to include all forms of radioactive contamination and the following definitions are added:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source nuclear material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954, or any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material;

(1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

(2) resulting from the operation by any person or organization of any "nuclear facility" included in the definition of "nuclear facility", paragraphs (a) and (b) of this exclusion.

"Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for;

　　(a) separating the isotopes of uranium or plutonium,

　　(b) processing or utilizing "spent fuel", or

　　(c) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of that material in the custody of the insured at the premises where equipment or the device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted and all premises used for the described operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

u.　Uninsured Motorists Coverage

　　Any uninsured or underinsured motorists coverage or any similar coverage.

3.　Supplementary Payments

We will pay, with respect to any claim or "suit" we defend:

a.　All expenses we incur.

b.　The cost of bail bonds in excess of the amounts provided by similar coverage(s) included in all "underlying liability insurance" and required because of accidents or traffic law violations arising out of the use of any vehicle to which the "bodily injury" liability coverage provided by this policy applies. We do not have to furnish these bonds.

CU 70 01 10 99　　　　　　　　　　　　　　　　　　　　　　　　　　Page 9 of 21

c.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance and in excess of amounts provided by similar coverage(s) included in all "underlying liability insurance". We do not have to furnish these bonds.

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings because of time off from work, up to $250 a day in excess of amounts provided by similar coverage(s), included in all "underlying liability insurance".

e.  All costs which are taxed against the insured in the "suit" in excess of amounts provided by similar coverage(s) included in all "underlying liability insurance".

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay through this policy.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment payable from this policy that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.  The payments are not subject to the "self-insured retention" of this policy.

## B. WHO IS AN INSURED

1.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

a.  Your "employees," other than your "executive officers," (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, no "employee" is an insured for:

(1)  "Bodily injury" or "personal and advertising injury":

(a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

07/25/02  14:11 FAX 803 3    1958       SEI

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1) (a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of "bodily injury" or "personal and advertising injury" described in paragraphs (1) (a) or (b) above; or

(d) Arising out of his or her providing or failure to provide professional health care services.

(2) "Property damage" to property:

(a) owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.  Any person (other than your "employee") or any organization while acting as your real estate manager.

c.  Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d.  Your legal representative if you die, but only with respect to duties as your legal representative. That representative will have all your rights and duties under this policy.

3.  With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission.

Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

However, no person or organization is an insured with respect to:

a.  "Bodily injury" to a co-"employee" of the person driving the equipment; or

b.  "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.  Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

07/25/02  14:11 FAX 803 3  1958        SEI                                   ☑032

    c.   Coverage does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

5.   Any additional insured included in a policy listed in the Schedule of Underlying Insurance, but not for broader coverage than that provided by the "underlying liability insurance". Any insured defined in this paragraph shall be considered an additional insured of this policy. Any additional insured of this policy is subject to all the conditions of the policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## C. LIMITS OF INSURANCE

1.   The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.   Insureds;

    b.   Claims made or "suits" brought; or

    c.   Persons or organizations making claims or bringing "suits".

2.   We will pay those sums, subject to the coverage provided by this policy, which exceed the:

    a.   Limits of liability of the applicable "underlying liability insurance"policy listed in the Schedule of Underlying Insurance, or

    b.   The "self-insured retention" listed in item 3.(c) of the Declarations; whichever applies.

3.   The Limit of Insurance shown in item 3.(a) of the Declarations is the most we will pay for all damages under this policy because of all "bodily injury", "property damage" and "personal and advertising injury" arising out of any one "occurrence".

4.   The Aggregate Limits of Insurance shown in item 3.(b) of the Declarations fix our liability for the total of all sums paid under this policy as a result of the insured's liability arising out of:

    a.   The "products-completed operations hazard";

    b.   Occupational disease of your "employees"; or

    c.   All other hazards, except liability arising from the ownership, operations, maintenance, entrustment or use of an "auto". Use includes "loading or unloading".

This limit applies separately to 4.a.,b.,and c. above.

5.   If the aggregate limits of liability of the "underlying liability insurance" policy have been exhausted, this policy will apply as underlying (primary) insurance.

The Limits of Insurance provided by this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## D. CONDITIONS

CU 70 01 10 99

1. **Cancellation**

   a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for non-payment of premium.

      (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   f. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. **Changes**

   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to request changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

3. **Examination of Your Books and Records**

   We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

4. **Inspections and Surveys**

   We have the right but are not obligated to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

   Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

   This condition applies not only to us, but also to any rating, advisory rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

5.  **Premiums**

The first Named Insured shown in the Declarations:

a.  Is responsible for the payment of all premiums; and

b.  Will be the payee for any return premiums we pay.

6.  **Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

7.  **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

8.  **Duties in the Event of Occurrence, Offense, Claim or Suit**

a.  You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim. Notice should include:

(1) How, when and where the "occurrence" took place.

(2) The names and addresses of any injured persons and witnesses.

(3) The nature and location of any injury or damage arising out of the "occurrence".

b.  If a claim is made or "suit" is brought against any insured, you must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.  No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

9.  **Legal Action Against Us**

No person or organization has a right under this policy:

CU 70 01 10 99

    a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    b.   To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after the actual trial.

We will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**10. Other Insurance**

This insurance is excess over all other policies except:

    a.   When the other policy was purchased to be in excess of this policy, or

    b.   When the terms of this policy and the other policy coincide to provide excess coverage for the same loss.

    When this policy provides excess coverage coinciding with coverage provided under another policy, the method of sharing will be as follows:

    (1)  If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    (2)  If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**11. Maintenance of Underlying Insurance**

It is your responsibility to maintain the policies listed in the Schedule of Underlying Insurance, including renewals or other replacements. Coverage under these policies shall not become more restrictive except for any reduction of the aggregate limits due to payment of claims.

In the event of your failure to maintain these policies, due to:

    a.   Insolvency of the underlying insurer;

    b.   Your breach of the underlying policy's provisions; or

    c.   Failure to replace expired or cancelled coverage;

our liability shall only apply to those sums in excess of the limit of liability of the policy which applies to the loss and which is specified in the Schedule of Underlying Insurance.

**12. Premium Audit**

    a.   We will compute all premiums for this policy in accordance with our rules and rates.

    b.   Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid

for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such time as we may request.

13.  **Representations**

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

14.  **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom claim is made or "suit" is brought.

15.  **Transfer of Rights of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. You will still retain the right to recover any amount you paid as a "self-insured retention". At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

16.  **When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

17.  **Loss Payable**

We will not pay any amount of loss due to an "occurrence" until the underlying liability insurer has paid the loss for the "occurrence" under the provisions of the "underlying liability insurance" or the insured has paid the "self-insured retention," whichever applies.

18.  **Appeals**



# FAX

July 25, 2002

To: Thom Graham

From: Roy McRea, Smith Enterprises, Inc.

See entire policies attached.

Thanks

Roy

704-339-5881

EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MANHATTAN GROUP LLC, d/b/a Manhattan Toy; JELLYCAT TOY COMPANY, LTD., formerly known as Manhattan Toy Company, Ltd.; and JELLYCAT, LTD., | Case No.: |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| SMITH ENTERPRISES, INC, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiffs Manhattan Group, LLC., d/b/a Manhattan Toy, ("Manhattan Toy"), Jellycat Toy Company, Ltd. (formerly known as The Manhattan Toy Company, Ltd.), and Jellycat, Ltd. (collectively "Jellycat"), for their Complaint against Defendant Smith Enterprises, Inc. ("Smith"), allege:

## PARTIES

1.    Manhattan Toy is a limited liability company, organized and existing under the laws of the State of Wyoming, and with its general offices in Minneapolis, Minnesota.

2.    Jellycat Toy Company, Ltd. and Jellycat, Ltd. are incorporated under the laws of England and Wales, with their principal place of business in London, England.

3.    Upon information and belief, Smith is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Rock Hill, South Carolina.

## JURISDICTION AND VENUE

4.    This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has personal jurisdiction over Smith. Smith sold the infringing articles to a national store network, Wal-Mart, and reasonably anticipated sales in Minnesota. Sales of the infringing articles have occurred in Minnesota. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## COUNT ONE

## COPYRIGHT INFRINGEMENT

6.    On or about January 27, 2000, Manhattan Toy applied for a Certificate of Registration for a soft sculpture work entitled Groovy Girls Collection. The Certificate was issued and bears Registration No. VA 985-695. A true and correct copy of the Registration is attached as Exhibit 1.

7.    Manhattan Toy owns all right, title and interest in and to the copyright for the soft toy entitled Groovy Girls Collection.

8.    On information and belief, Smith has been importing from China, marketing and distributing unauthorized copies of Manhattan Toy's Groovy Girls Collection. These dolls are distributed in a "My Best Friends" Easter Basket (the "My Best Friends Dolls").

9.    By the actions alleged above, Smith has infringed and will continue to infringe Manhattan Toy's copyright in and relating to the Groovy Girls Collection by the distribution,



offer for sale, and sale of products which are direct copies of Manhattan Toy's copyrighted Manhattan Toy Groovy Girls Collection.

10.     Jellycat owns U.S. Copyright Registration No. VA 935-311, effective February 5, 1999, which claims a three-dimensional sculptural doll work.  A true and correct copy of this registration is attached as Exhibit 2.  On or about March 27, 2001, Manhattan Toy obtained the sole and exclusive right to prosecute any and all claims of infringement under Jellycat's U.S. Copyright Registration No. VA 935-311.

11.     On information and belief, Smith has been importing from China, marketing and distributing unauthorized copies of the work claimed in U.S. Copyright Registration No. VA 935-311.  These dolls are distributed in a "My Best Friends" Easter Basket (the "My Best Friends Dolls").

12.     By the actions alleged above, Smith has infringed and will continue to infringe U.S. Copyright Registration No. VA 935-311 by the distribution, offer for sale, and sale of products which are direct copies of the copyrighted three dimensional sculpture dolls work of U.S. Copyright Registration No. VA 935-311.

13.     Manhattan Toy is entitled to an injunction restraining Smith, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further acts of copyright infringement in violation of the copyright laws.

14.     Manhattan Toy is further entitled to recover from Smith damages it has sustained and will sustain, and any gains, profits and advantages obtained by Smith as a result of Smith's acts of infringement alleged above.  Alternatively, Manhattan Toy is entitled to statutory damages.

15.    Manhattan Toy has been damaged by Smith's copyright infringement in an amount yet to be determined, but reasonably believed to be substantially in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendant as follows:

a.    That the Court find that Defendants have infringed U.S. Copyright Registration No. VA 985-695 and U.S. Copyright Registration No. VA 935-311;

b.    That Smith, its directors, officers, agents, employees and other persons in active concert or privity or in participation with them, be preliminarily and permanently enjoined from directly or indirectly infringing U.S. Copyright Registration No. VA 985-695 and U.S. Copyright Registration No. VA 935-311 by continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, distribute, offer for sale or sell any works derived or copied from U.S. Copyright Registration No. VA 985-695 and U.S. Copyright Registration No. VA 935-311, or to participate or assist in any such activities;

c.    That Smith, its directors and officers, agents, employees and all other persons in active concert or privity or in participation with them, be required to recall and deliver up for destruction all My Best Friends Dolls and all other matter used to produce or market the My Best Friends Dolls;

d.    That judgment be entered for Manhattan Toy and against Smith for Manhattan Toy's actual damages and for any profits attributable to infringement of Manhattan Toy's copyrights, in accordance with the proof; or alternatively that statutory damages be awarded;

4



e.   That Smith be required to account for all gains and profits derived from its acts of

copyright infringement;

f.   That Manhattan Toy be awarded its attorneys fees, as well as its costs and

expenses incurred in this action;

g.   That Manhattan Toy be awarded such other and further relief as the Court deems

proper.


Dated: July 1, 2002                        **DORSEY & WHITNEY LLP**

                                           By _____
                                           J. Thomas Vitt (#183817)
                                           Heather D. Redmond  (#313233)
                                           Suite 1500
                                           50 South Sixth Street
                                           Minneapolis, MN  55402
                                           Telephone:  (612) 340-5675
                                           Facsimile:  (612) 340-8856

                                           Attorneys for Manhattan Toy

5

Exhibit C

**Moore&VanAllen**

April 9, 2003

Arlene A. Abdilla
Senior Field Claims Specialist
Amerisure Insurance
P.O. Box 2060
Farmington Hills, MI  48333-2060

**Thomas E. Graham**
Attorney at Law

T  704 331 3581
F  704 339 5881
thomgraham@mvalaw.com

**Moore & Van Allen PLLC**

Suite 4700
100 North Tryon Street
Charlotte, NC 28202-4003

**Re:** Your Claim Number:      928149
Your Insured:            Smith Enterprises
Claimant:                Manhattan Group, L.L.C.
Date of Loss:            On or about April 1, 2002

Dear Ms. Abdilla:

As I advised you previously, our client has been engaged in negotiations with the claimant in the above-referenced matter.  Our client believes that it has reached a settlement that will be acceptable to both parties. Before we finalize the settlement, our client needs to resolve its request for Amerisure to cover the referenced claim.  In an effort to avoid the risk of our client asserting a claim against Amerisure for bad faith in failing to provide coverage for this claim, we are requesting that Amerisure contribute the sum of $100,000 towards settlement.  This amount is only a portion of the total settlement amount.  Our client will pay the remaining amount to settle the matter.  This represents our client's attempt to hold to a minimum Amerisure's exposure. We believe that this offer is a fair and reasonable settlement of our disagreement over whether coverage is available for the claim.

Please let me know at your earliest convenience whether Amerisure will make the referenced payment.  I look forward to hearing from you.

Very truly yours,

Moore & Van Allen PLLC

Thomas E. Graham

cc:    Mr. Roy McRea

Raleigh, NC
Durham, NC
Charleston, SC

## CERTIFICATE OF SERVICE

I, the undersigned employee of Turner Padget, Graham & Laney, hereby certify that on this 24th day of July, 2003, I have served a copy of our

**Civil Cover Sheet;**
**Notice of Removal; and**
**Defendant's Answers to Local Rule 26.01 DSC Interrogatories**

by placing a copy of same in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below by depositing said envelope and its contents in the United States mail at Columbia, South Carolina.

**ADDRESSEE(S):**

*Scott M. Tyler, Esquire*
Moore & Van  Allen, PLLC
100 N. Tryon Street, Floor 47
Charlotte, North Carolina 28202

Kristi Chafin
TURNER, PADGET, GRAHAM & LANEY, P.A.
Post Office Box 1473
Columbia, SC 29202